**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

WALTER ALLEN DUBOSE                          CIVIL ACTION NO. 24-0120

                                             SECTION P

VS.

                                             JUDGE DAVID C. JOSEPH

PAUL CAMPBELL, ET AL.                        MAG. JUDGE KAYLA D. MCCLUSKY

### REPORT AND RECOMMENDATION

Plaintiff Walter Allen DuBose, a prisoner at Ouachita Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately January 29, 2024, under 42 U.S.C. § 1983. He names the following Defendants: Warden Paul Campbell, Nurse Donna Norman, Captain Chris Jerkins, OCC, the medical department at OCC, the administration at OCC, Court of Ouachita Parish, Judge Leehy, and District Attorney Holly Chambers.[1]

For reasons that follow, the Court should retain Plaintiff's claims (1) that Warden Campbell and Nurse Donna Norman are deliberately denying and/or delaying medical treatment for his detached focus lens; (2) that Nurse Norman would not allow him to see a visiting doctor following his elbow/arm injury on February 25, 2023; and (3) that Nurse Norman denied him surgery following a physician's surgery recommendation on March 21, 2024. The Court should dismiss Plaintiff's remaining claims, as well as his requests for a transfer, habeas corpus relief, and relief from sex offender registration requirements.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

## Background

Plaintiff received a "focus lens" in his only remaining eye in 2017, but it "came undone." [doc. # 20, p. 1].  On July 27, 2022, Dr. Sharma evaluated him at OCC.  [doc. # 1, p. 5].  On February 7, 2023, Dr. Wilson allegedly examined him, found that his focus lens was detached, told him that he needed treatment at Ochsner LSU, called 'Ochsner' at 'Shreveport eye clinic' and spoke with Dr. Cavanaugh, and advised Plaintiff that he "would be seen by that Dr. within (2) weeks."  [doc. #s 20, p. 1; 36, p. 2].  Dr. Wilson scheduled him for "eye treatment" and surgery at Ochsner LSU in Shreveport.  [doc. # 20, p. 1].  Dr. Wilson's "finding on the examination was written down on paper in his hand writing[.]"  [doc. # 26, p. 2].

Plaintiff claims that for almost two years, he has submitted numerous requests, paper forms, and notes to "medical" and Warden Campbell about his condition and need for his scheduled surgery, but he has yet to have it.  [doc. # 20, pp. 5-6].  He claims that Warden Campbell and Nurse Donna Norman, the "head" of "OCC Medical," are deliberately denying and/or delaying his treatment and prolonging his suffering.  *Id.*  He alleges that Warden Campbell and Nurse Norman "Use a common tactic [of] saying [he] refused treatment."  *Id.*  He also states that, although he was sent to a hospital on July 26, 2023, it was only "to make it seem they're giving effort," and "they are inclined to try to cover their tracks."  *Id.* at 7.  Plaintiff maintains that he is at great risk of losing his sight, that he suffers from daily discomfort and increasing pain, and that he struggles to see.  [doc. # 20, p. 1].

Next, Plaintiff claims that OCC and Captain Jerkins are non-compliant with "rules, policies, procedures with 'DOC' on disciplinary and grievance process for 'DOC' inmates. [sic]."  [doc. #s 1, pp. 6-7; 18, p. 1; 26, p. 5].  He alleges that grievance forms lack case numbers or file numbers, and grievances are not "handl[ed]" properly.  [doc. # 1, p. 7].

Plaintiff claims next that a state court judge, Judge Leehy, unfairly denied his application for post-conviction relief relating to his convictions for aggravated battery and "failure to register" as a sex offender.  [doc. #s 1, p. 8; 18, p. 1; 36, p. 6].  Consequently, Plaintiff reasons, he was subjected to double jeopardy.  *Id.*  He maintains that District Attorney Holly Chambers was also involved in the denial of his application.  *Id.*

Plaintiff claims that administration at OCC, including Captain Jerkins, refused to assist him in completing his application to proceed in forma pauperis in this proceeding.  [doc. #s 10, p. 1; 36, p. 5].

Plaintiff next states that on February 25, 2023, he injured his elbow in a physical altercation with another inmate.  [doc. # 33, p. 3].  He "surmised that his arm was fractured at the elbow." *Id.*  On February 27, 2023, he saw Nurse Greer.  *Id.*  On March 1, 2023, Nurse Greer told him that she scheduled him to see a visiting doctor.  *Id.*  Plaintiff alleges, however, that on two back-to-back occasions he was rescheduled for the visiting doctor.[2] *Id.*  He then filed a "sick-call request" to no avail.  *Id.*  He claims that on March 9, 2023, Nurse Greer told him that he "had been refused for seeing visiting doctor[.] [sic]."  [doc. # 33, p. 3].  Plaintiff maintains that he suffered pain through 2023, and his arm healed improperly; he cannot straighten it, and it "gives out."  [doc. #s 33, p. 3; 36, p. 3].  He faults Nurse Norman, claiming that Norman is "responsible for the rescheduling [him] twice for [him] not seeing a visiting doctor just after injury occurred Feb. 2023."  [doc. # 36, p. 4].

---

[2] Plaintiff does not name Greer as a Defendant or otherwise indicate that he seeks relief from Greer.

Next, Plaintiff states that on February 9, 2024, Sergeant Wells utilized force, taking him to the floor, pulling and bending his hands up to his shoulders, and causing him terrible pain.[3] [doc. #s 33, p. 3; 36, p. 3].  Thereafter, Nurse Wilson examined Plaintiff's arm, which was starting to swell.  *Id.*  Wilson noted the swelling and scheduled him "to see [a] visiting doctor." [doc. # 36, p. 3].  Plaintiff claims that he submitted a medical request, but even though they could see that his entire arm was swollen, "OCC medical nurses denied" his request because he was not crying or bleeding.  [doc. #s 33, p. 3; 36, p. 4].

On February 15, 2024, a visiting physician, Dr. Sharma, scheduled Plaintiff "to be seen at Ochsner-LSU-Conway."  [doc. # 33, p. 3].  On February 23, 2024, Plaintiff "was seen at Ochsner-LSU-Conway[,]" where he received x-rays and pain medication.  *Id.*  He visited the hospital again on March 21, 2024, and a physician told him that his "arm/elbow" was broken and that he needed surgery to install a plate and re-break the bone where it previously "healed out of place."  [doc. #s 33, p. 3; 18, p. 3].  As above, Plaintiff maintains that the lack of medical care for his injured elbow in February and March 2023, caused the bone to heal improperly.  [doc. # 33, p. 3].  He claims that "the jail's head medical person has had knowledge of [his] need of treatment . . . on this serious medical need too, and declines to send [him]."  [doc. # 36, p. 4].  He states that his bone could still be broken, he risks greater injury, and his arm "gives out now" at times.  *Id.*

---

[3] Plaintiff appears to disclaim any allegation of excessive force.  After the undersigned instructed Plaintiff to provide additional detail about the use of force, Plaintiff amended and stated that he "mentioned" the "incident with Wells . . . to show how it prompted medical to get any injury to the arm looked at."  [doc. # 36, p. 3].  Of note, Plaintiff did not mention the use of force in his first five pleadings.   If Plaintiff intends to seek relief for, and claim, excessive force, he may clarify his intention in an objection to this Report and Recommendation.

In his initial pleading, Plaintiff states that he was held in an isolation cell "doing 28, 28, 28, & 28 days[.]" [doc. # 1, p. 7]. He adds that he did not receive an "incident report/write-up on the incident," and he did not appear before a disciplinary court. [doc. # 1, p. 7]. He states: "this is not in DOC guidelines for adult rules and procedures of inmate punishments." *Id.* He alleges several pleadings later that "detox cells" at OCC lack running water for drinking and hand washing after defecating, contain a hole in the floor for defecating and urinating which is sometimes not flushed, and house five inmates. [doc. # 36, p. 5]. He alleges that no disciplinary court is "held on most disciplinary reports." *Id.*

Plaintiff states that he suffers "retaliation for filing" a lawsuit in state court in March or April 2017. [doc. # 1, p. 6].

Plaintiff seeks a transfer to another facility, habeas corpus relief, monetary compensation, the elimination of his jail debt, and to be relieved of sex offender registration requirements. [doc. #s 1, pp. 6, 9, 10; 17, p. 1].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[4]  *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b)

---

[4] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the

same presumption does not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level."  *Montoya v. FedEx Ground Package Sys., Inc*., 614 F.3d 145, 148 (5th Cir. 2010) (*quoting Twombly*, 550 U.S. at 555).  "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice.  *Iqbal*, 556 U.S. at 677.

 "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010).  Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint."  *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint.  *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).  A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone.  *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted).  Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions."  *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

To plead a constitutional violation, a plaintiff "must demonstrate that a government

official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. <u>Surgery for Focus Lens</u>

The Court should retain Plaintiff's claim that Warden Campbell and Nurse Donna Norman are deliberately denying and/or delaying medical treatment and/or surgery for his detached focus lens, prolonging his suffering. In brief, construing his allegations liberally and in his favor at this stage of the proceeding, Plaintiff plausibly alleges that he had and has a serious medical need and that Norman and Campbell knew of yet disregarded a substantial risk of serious harm to him.[5] [doc. # 20, p. 1].

B. <u>Delayed Treatment for Injured Elbow</u>

The Court should retain Plaintiff's claim that Nurse Norman would not allow him to see a visiting doctor following his elbow/arm injury on February 25, 2023. Like his claim above, he plausibly alleges that he had a serious medical need and, albeit thinly, that Nurse Norman knew of yet disregarded a substantial risk of serious harm. [doc. # 36, p. 4]. While Plaintiff received some treatment on February 23, 2024, and on March 21, 2024, following additional injury (or re-

_____

[5] Plaintiff previously moved for a preliminary injunction, seeking to enjoin Warden Paul Campbell and Nurse Donna Norman to send him to his allegedly physician-ordered appointment for treatment and surgery on his detached "focus lens." [doc. # 20]. Campbell and Norman presented medical records from Plaintiff's February 7, 2023, appointment which indicated that Dr. Wilson did not prescribe or schedule surgery or any other eye treatment. [doc. # 28-1, pp. 1-12]. Thus, the Court denied Plaintiff's motion, opining: "[A]t this stage of the proceeding, there is no indication that Defendants delayed any prescribed treatment (because there was no prescribed treatment to delay). Consequently, Plaintiff does not demonstrate a substantial likelihood that Defendants were deliberately indifferent to any substantial risk of serious harm." [doc. # 29, p. 4]. In an amended pleading, Plaintiff seeks permanent injunctive relief. [doc. # 36, p. 1]. He maintains that his medical records were altered to "omit Dr. Wilson's hand signed and written notes" relating to his "treatment that day." *Id.* He states that Nurse Norman "had the Ochsner-Conway, Monroe Eye Clinic doctor or the NA there go back and delete what he found at examining [him] on [his] medical complaint of focus lens being detached and what he put down in writing on [his] further need of treatment he scheduled . . . [sic]." [doc. # 36, p. 4]. In other words, Plaintiff appears to contest the veracity of the contentions and medical records that Defendants presented. In any event, for purposes of this Report and Recommendation, the undersigned relies only on Plaintiff's pleadings and attachments, accepting all well-pled allegations as true.

injury) to his arm, he alleges that the delay in treatment caused him substantial harm: he suffered

pain through 2023, and his arm healed improperly to where he cannot straighten it and it "gives

out."  [doc. #s 33, p. 3; 36, p. 3].

      C. Denied Surgery for Broken Arm/Elbow After March 21, 2024

      As above, on March 21, 2024, after Plaintiff injured (or re-injured) his arm/elbow

following Wells' use of force, a physician told Plaintiff that his "arm/elbow" was broken and that

he would need surgery to install a plate and re-break the bone where it previously "healed out of

place."  [doc. #s 33, p. 3; 18, p. 3].  He claims that "the jail's head medical person has had

knowledge of [his] need of treatment . . . on this serious medical need too, and declines to send

[him]."  [doc. # 36, p. 4].

      The Court should retain this claim against Nurse Norman, who Plaintiff elsewhere

describes as the "head" of "OCC Medical."  He has a serious medical need, and, upon initial

review, he plausibly alleges that Norman knew of a substantial risk of serious harm.

**3. Nursing Staff as a Single Entity**

      To the extent Plaintiff faults "OCC medical nurses" or  the medical department at OCC

for impeding his audience with a visiting doctor following his elbow/arm injury on February 25,

2023, the Court should dismiss Plaintiff's claims against these Defendants because "OCC

medical nurses" and the OCC medical department are not (as a groups) defendants amenable to

suit.

      Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is

determined . . . by the law of the state where the court is located . . . ."  Under Louisiana law, an

entity must qualify as a "juridical person," which is an "entity to which the law attributes

personality, such as a corporation or a partnership."  LA. CIV. CODE art. 24.

Here, the Court should dismiss Plaintiff's claims against OCC Medical Nurses and the OCC medical department because they do not qualify as juridical persons. *See Henderson v. Mid States Servs., Inc.*, 67 F. App'x 247 (5th Cir. 2003) (finding that the plaintiff did not show "that the Medical Department is a legal entity amenable to suit . . . ."); *see also Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 283 (5th Cir. 2002).

**4. Nurses as Unidentified Persons**

Even assuming that by "OCC Medical Nurses" Plaintiff refers not to a singular entity but to unidentified nurses, he does not state a plausible claim because he does not sufficiently address how these unidentified nurses were personally involved in depriving him of a constitutional right.

As above, a complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662.

Further, Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Here, the undersigned instructed Plaintiff to "provide a separate description of what,

exactly, each defendant did to violate his rights[.]"  [doc. # 34, p. 4].  Plaintiff filed an amended

pleading, but he did not sufficiently identify any particular nurse's "personal involvement in

conduct that caused constitutional deprivation."  *See Alderson v. Concordia Par. Corr. Facility*,

848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to

correctly house the plaintiff because despite the magistrate judge's instruction to "state what

each defendant did[,]" the plaintiff did not identify a responsible defendant); *Pierce v. Warden of*

*Tarrant Cnty.*, 1 F.3d 1236 (5th Cir. 1993) (affirming that the plaintiff's claims "against the

unknown defendants had no arguable basis in law or fact" because the "complaint [did] not

specify any action or inaction by any unknown defendant.").

> In sum, even assuming Plaintiff names unidentified nurses, the Court should dismiss

Plaintiff's claims against them because he does not address how they were personally involved in

depriving him of a constitutional right.

## 5. Non-Compliance with Agency Rules

> Plaintiff claims that OCC and Captain Jerkins are non-compliant with "rules, policies,

procedures with 'DOC' on disciplinary and grievance process for 'DOC' inmates. [sic]."  [doc.

#s 1, pp. 6-7; 18, p. 1; 26, p. 5].

> First, however, OCC is unamenable to suit because it does not qualify as a juridical

person; accordingly, the Court should dismiss Plaintiff's claims against OCC.

> Second, "[T]he failure of prison administrators to follow prison rules and regulations

does not, without more, give rise to a constitutional violation."  *Moreno v. Bunton*, 193 F.3d 518

(5th Cir. 1999); *see Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 369 (5th Cir. 2017)

("The [LDPSC] and [Corrections Corporation of America] internal rules and regulations do not

alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal footnotes removed).

Here, to the extent Plaintiff seeks relief for Captain Jerkins' alleged violations of DOC rules, he does not state a plausible claim. The Court should dismiss this claim.

**6. Lack of a Responsive Grievance Procedure**

Plaintiff alleges that grievance forms lack case numbers or file numbers, and grievances are not "handl[ed]" properly. [doc. # 1, p. 7].

A prisoner, however, does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . .  grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claims.

**7. Judicial Immunity**

Plaintiff claims that a state court judge, Judge Leehy, unfairly denied his application for post-conviction relief relating to his convictions for aggravated battery and "failure to register" as a sex offender. [doc. #s 1, p. 8; 18, p. 1; 36, p. 6].

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). It "applies even when the judge is accused of acting maliciously and corruptly . . . ." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). It "extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (*citing Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* Courts consider four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.* "Immunity may be applied even if one or more of these factors is not met." *Morrison v. Walker*, 704 F. App'x 369, 373 (5th Cir. 2017).

"Immunity is not affected by the alleged magnitude of the judge's errors or the mendacity of his acts." *Stokes v. Ward*, 132 F.3d 1455 (5th Cir. 1997); *Mitchell v. McBryde*, 944 F.2d 229,

230 (5th Cir. 1991) ("The judge is absolutely immune for all judicial acts not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.").

Here, ruling on applications for post-conviction relief,[6] managing or presiding over court proceedings,[7] and ruling on objections and motions,[8] and are all acts normally performed by a judge. Moreover, Plaintiff does not allege that Judge Leehy acted outside of his courtroom or chambers. Likewise, Plaintiff's claims clearly "center around" proceedings before the judge, and nothing indicates that the alleged acts arose outside of a visit to the judge in his official capacity.[9] Nor does Plaintiff allege that the judge acted in the absence of all jurisdiction. *See* LA. CONST. ART. V, § 16 ("[A] district court shall have original jurisdiction of all civil and

---

[6] *See Severin v. Par. of Jefferson*, 357 F. App'x 601, 604 (5th Cir. 2009) (finding judges immune and opining: "the denial of Severin's writ application clearly involves a function normally performed by a judge, and by filing the writ application Severin was dealing with the judges in their official judicial capacities."); *Shabazz v. Franklin*, 24 F.3d 239 (5th Cir. 1994) ("Shabazz's allegations against Judge Hampton stem from the judicial acts he performed during the post-conviction proceeding, and therefore Judge Hampton is entitled to absolute immunity.").

[7] *See Bradley v. Salvant*, 2020 WL 1896550, at *1 (5th Cir. Apr. 16, 2020); *Broadway v. Sinex*, 166 F.3d 339 (5th Cir. 1998).

[8] *See Clark v. Lindsay*, 68 F.3d 465 (5th Cir. 1995) (finding a judge immune from a claim that the judge denied the plaintiff's motion for appointment of counsel); *Bailey v. Johnston*, 2012 WL 5207589, at *5 (W.D. La. Oct. 1, 2012), report and recommendation adopted, 2012 WL 5199409 (W.D. La. Oct. 22, 2012) (finding that denying a motion was "clearly" an act that arose out of judges' normal judicial functions); *Diaz v. Tocci*, 2016 WL 3365494, at *6 (W.D. Tex. June 16, 2016) ("[T]he fact plaintiff disagrees with the rulings made by his state trial court judges does not, standing alone, establish those rulings were taken in a complete absence of all jurisdiction or that those judges were acting outside the scope of their official judicial duties when they made the rulings adverse to plaintiff.").

[9] *See Morrison*, 704 F. App'x at 374 (finding judicial immunity even where the plaintiff failed to offer any allegations relating to three of the four *Ballard* factors); *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 674 (5th Cir. 2015) ("Avdeef makes no effort to argue that Judge Chupp's actions were 'nonjudicial' in nature or were taken 'in the complete absence of all jurisdiction,' as required to overcome judicial immunity.").

criminal matters.").

Accordingly, Judge Leehy is entitled to absolute judicial immunity with respect to Plaintiff's request for compensation.

Plaintiff does not seek any other cognizable relief for his claims against Judge Leehy. He seeks a transfer to another facility and habeas corpus relief (including reversal of his sex offender convictions), but below the undersigned recommends denying these requests. He also seeks the elimination of his jail debt, but he does not connect this form of relief to his claim against Judge Leehy. Accordingly, the Court should also dismiss Plaintiff's claims against Judge Leehy for failure to state claims on which relief may be granted.

**8. District Attorney Holly Chambers[10]**

Plaintiff maintains that District Attorney Holly Chambers was involved in the denial of his post-conviction relief application, engaging in unspecified prosecutorial misconduct. [doc. # 1, p. 8]. Plaintiff's claim, however, is impermissibly conclusory. He does not sufficiently explain *how* Chambers was involved in the denial of his application. The Court should, therefore, dismiss Plaintiff's claims against Chambers as legally frivolous and for failure to state a claim on which relief may be granted.

Even assuming Plaintiff's claim was not too devoid of detail to state a plausible claim and alleges, for instance, that Chambers was involved in the denial of his application for post-conviction relief because she opposed his application, Chambers would be entitled to prosecutorial immunity.

---

[10] Although Plaintiff identifies Holly Chambers as District Attorney, the undersigned takes judicial notice that Robert S. Tew is the District Attorney for the Fourth Judicial District, which encompasses the same area over which Judge Leehy serves as a judge. *See* https://4thda.org/ (last visited 06/25/2024). Ms. Chambers has previously been identified as an Assistant District Attorney, but, regardless of her position, the analysis remains the same.

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[S]tate prosecutors are absolutely immune from § 1983 damages claims based on activities intimately associated with the judicial phase of the criminal process." *Singleton v. Cannizzaro*, 2020 WL 1922377, at *3 (5th Cir. Apr. 21, 2020).

The Court "distinguishes between (1) actions taken 'in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [the prosecutor's] role as an advocate for the State,' and (2) 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Id.* (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). "[C]onduct protected by absolute immunity is not limited only to the act of initiati[ng judicial proceedings] itself and to conduct occurring in the courtroom, but instead includes all actions which occur in the course of [the prosecutor's] role as an advocate of the State." *Id.* (internal quotation marks and quoted sources omitted).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. *See Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006). Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Here, District Attorney Holly Chambers is immune from Plaintiff's ostensible claim that she was involved in the denial of his application for post-conviction relief.  *See Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018) (finding a prosecutor immune for opposing the plaintiff's habeas petition and observing, "If the prosecutor continues his role as an advocate, absolute immunity extends to conduct during post-conviction proceedings.").

 Under Plaintiff's threadbare allegations, Chambers acted only in the course of her role as an advocate for the State.  Accordingly, the Court should dismiss these claims as frivolous and because Plaintiff seeks monetary relief from a defendant immune from such relief.

Plaintiff does not seek any other cognizable relief for his claims against Chambers.  He seeks a transfer to another facility and habeas corpus relief (including reversal of his sex offender convictions), but below the undersigned recommends denying these forms of relief.  He also seeks the elimination of his jail debt, but he does not connect this form of relief to his claim against Chambers.  Accordingly, the Court should also dismiss Plaintiff's claims against Chambers for failure to state claims on which relief may be granted.

## 9. Habeas Corpus

Plaintiff seeks habeas corpus relief, including the reversal of his sex offender convictions and related obligations.  Habeas corpus relief is unavailable through a civil rights action.  *See Calderon v.  Ashmus*, 523 U.S. 740, 747 (1998) (any claim attacking the validity or duration of confinement must be raised in a habeas corpus petition); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  "A habeas petition . . . is the proper vehicle to seek release from custody." *Carson v. Johnson*, 112 F.3d 818, 820 (5th Cir. 1997).  The Court should therefore dismiss Plaintiff's habeas corpus request from this civil rights action.

Plaintiff may pursue his request for release from custody in a habeas corpus action.  The undersigned cautions that Plaintiff must first exhaust all his available *state* remedies before he may obtain habeas corpus relief in this Court.  The undersigned also cautions Plaintiff that habeas corpus relief is generally unavailable as a remedy for claims that are not related to the cause of the prisoner's confinement.  *See generally Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

## 10. Court of Ouachita Parish

Plaintiff names "Court of Ouachita Parish" as a defendant.  The state court, however, does not qualify as a juridical person under Louisiana law.  *See McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 417 (5th Cir. 2023) ("The district court did not err in holding the Twenty-First Judicial District lacks the capacity to be sued."); *Griffith v. Louisiana*, 808 F. Supp. 2d 926, 934 (E.D. La. 2011) ("[A] Louisiana state court does not qualify as a juridical person and thus lacks the capacity to be sued.").[11]  Accordingly, the Court should dismiss Plaintiff's claims against Court of Ouachita Parish.

## 11. Transfer

Plaintiff seeks a transfer to a different facility.  A prisoner, however, has no constitutional right to be housed in any particular facility or transferred from one facility to another, even if

---

[11] *See also Swift v. Juvenile Court*, 2009-1182 (La. App. 3 Cir. 3/10/10), 2010 WL 786031 (finding "that the law does not grant a juvenile court the procedural capacity to sue or be sued."); *Damond v. Marullo*, 2020 WL 862180, at *3 (La. Ct. App. Feb. 20, 2020), *writ denied,* 302 So. 3d 1122 (La. 2020) ("Moreover, Article 5 of the Louisiana Constitution, entitled 'Judicial Branch,' provides for the establishment of the courts in this state. Absent therein is any provision declaring that the courts are juridical persons or otherwise granting the courts the procedural capacity to be sued."); *Durden v. Bryson*, 2017 WL 4855437, at *2 (W.D. La. Sept. 26, 2017), report and recommendation adopted, 2017 WL 4847783 (W.D. La. Oct. 25, 2017); *Chisom v. Edwards*, 2012 WL 13005340, at *7-9 (E.D. La. Aug. 6, 2012).

conditions and amenities in one may be preferable to another. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009). "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000); *Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("[T]he State may confine [a prisoner] and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.").

Moreover, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department." LA. REV. STAT. § 15:824(A).

Here, as Plaintiff has no federal constitutional right to be transferred to, or confined in, a place of his choosing, and because Plaintiff's placement lies solely in the purview of the Department of Public Safety and Corrections, the Court should dismiss his request for a transfer.

## 12. Access to Court

Plaintiff claims that administration at OCC, including Captain Jerkins, refused to assist him in completing his application to proceed in forma pauperis in this proceeding. [doc. #s 10, p. 1; 36, p. 5].

To succeed on claim that a defendant violated a plaintiff's right to access the courts, the plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996). The "injury

requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 353. Rather, a plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (*quoting Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).

Here Plaintiff's access-to-court claim is premature. Plaintiff has secured in forma pauperis status[12] and has not lost the opportunity to pursue his claims *because of* defendants' action (or inaction). *See Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) ("[T]o make out a claim that his constitutional right of access to the courts has been violated, [a plaintiff] must have demonstrated that his position as a litigant was prejudiced by his denial of access to the courts."). In other words, he can still pursue the relief he seeks because his claims are pending. Plaintiff has not identified "a remedy that is not otherwise available in another suit . . . ." *See Waller v. Hanlon*, 922 F.3d 590, 602 (5th Cir. 2019) (finding that the plaintiffs did not identify a remedy that is not otherwise available in another suit that may yet be brought because the plaintiffs were actively litigating their underlying claim, because it was "too early to say" that the plaintiffs' underlying claim was compromised, and because the plaintiffs had yet to suffer a "concrete setback traceable to the defendants'" actions).[13]

As Plaintiff has not yet lost an actionable, nonfrivolous claim, his access-to-court claim is not ripe. *See Waller*, 922 F.3d at 602 ("Unless and until the plaintiffs' claim . . . suffers some

---

[12] [doc. # 31].

[13] "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

concrete setback traceable to the defendants' alleged [action], their allegation that the defendants impaired their effort to bring that claim is no more than speculation about an event that may or may not come to pass.").  The Court should therefore dismiss Plaintiff's access-to-court claim as unripe and, by extension, without prejudice.

## 13. Retaliation

Plaintiff mentions that he suffers retaliation for filing a state court suit in March or April 2017.  [doc. # 1, p. 6].  Plaintiff, however, does not identify a responsible defendant. Accordingly, the Court should dismiss this ostensible claim.

## 14. Limitation on Recovery Under 42 U.S.C. § 1997e(e)

In his initial pleading, Plaintiff states that he was held in an isolation cell "doing 28, 28, 28, & 28 days[.]"  [doc. # 1, p. 7].  He alleges in a later pleading that "detox cells" at OCC lack running water for drinking and hand washing after defecating, contain a hole in the floor for defecating and urinating which is sometimes not flushed, and house five inmates.  [doc. # 36, p. 5].  He appears to also argue that he was confined in unconstitutional conditions.  He adds that he did not receive an "incident report/write-up on the incident," and he did not appear before a disciplinary court, suggesting that he lacked these procedural protections before being assigned to a segregated cell.  [doc. # 1, p. 7].  He also alleges that no disciplinary court is "held on most disciplinary reports."  [doc. # 36, p. 5].

To reiterate, Plaintiff seeks a transfer to another facility, habeas corpus relief, monetary compensation, the elimination of his jail debt, and to be relieved of sex offender registration requirements.  [doc. #s 1, pp. 6, 9, 10; 17, p. 1].  Above, the undersigned recommended dismissing Plaintiff's request for habeas corpus, including his request to be relieved of sex offender registration requirements, and his request for a transfer.  The request to eliminate his jail

debt is not related to the instant claims.  Thus, Plaintiff's request for compensation is his only remaining request for relief for these claims.

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005).  "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff "brought" this action when he was incarcerated.  [doc. # 1, p. 2;].  As to the instant claims, he seeks monetary compensation for only mental or emotional injuries he suffered while in custody.

Plaintiff suffered physical injuries, but they are unrelated to his extant claims and associated request for monetary compensation.  *See Delgado v. U.S. Marshals*, 618 F. App'x 236, 237 (5th Cir. 2015) (affirming the dismissal of one of several claims under 42 U.S.C. § 1997e(e), because although the plaintiff suffered a physical injury, the injury was not related to the claim to which the court applied Section 1997e(e)).[14]  In other words, he does not allege that he suffered

---

[14] *See also Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) ("Although Jackson repeatedly asserts that his larger '*action*' contains allegations of a dental injury, and implies that this meets the injury requirement, our precedent demonstrates that, absent injury related to the strip search, his Eighth Amendment claim is not cognizable under § 1997e(e)."); *Green v. Denning*, 2010 WL 781723, at *3 (D. Kan. Mar. 5, 2010) ("[T]he physical injury requirement in

any physical injury—or any other injury or damage compensable by monetary relief—*because* any defendant deprived him of procedural due process or confined him in isolation or detox cells.

Plaintiff does not present a prior showing of physical injury or the commission of a sexual act as defined in 18 U.S.C. § 2246.  Thus, he may not recover compensation for mental or emotional injuries.

Accordingly, the Court should dismiss Plaintiff's request for compensatory relief for these claims.  As Plaintiff does not seek any other cognizable relief, the Court should dismiss these claims.

<u>**Recommendation**</u>

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Walter Allen DuBose's access-to-court claim be **DISMISSED WITHOUT PREJUDICE** as unripe.

**IT IS FURTHER RECOMMENDED** that—excepting Plaintiff's claims (1) that Warden Campbell and Nurse Donna Norman are deliberately denying and/or delaying treatment for his detached focus lens; (2) that Nurse Norman would not allow him to see a visiting doctor following his elbow/arm injury on February 25, 2023; and (3) that Nurse Norman denied him surgery following a physician's surgery recommendation on March 21, 2024—Plaintiff's remaining claims, including his requests for a transfer, habeas corpus relief, and relief from sex offender registration requirements, be **DISMISSED WITH PREJUDICE** as legally frivolous, for failure to state claims on which relief may be granted, and for seeking relief from Defendants immune from such relief.

---

§ 1997e(e) is claim specific."); *Turner v. Schultz*, 130 F. Supp. 2d 1216, 1224 (D. Colo. 2001) ("It would be contrary to this stated intent to allow a prisoner to bring any number of claims to court on the back of one injury."); *Beem v. Kansas*, 2012 WL 1534592, at *4 (D. Kan. Apr. 30, 2012) ("[M]erely bringing a case with one physical injury does not relieve all other claims from the physical injury requirement.").

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 25th day of June, 2024.


_____
Kayla Dye McClusky
United States Magistrate Judge