**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| WALTER ALLEN DUBOSE, Plaintiff, | ) | CIVIL ACTION NO. 3:24-cv-00120 |
| | ) | JUDGE DAVID C. JOSEPH |
| VERSUS | ) | |
| | ) | MAGISTRATE JUDGE MCCLUSKY |
| PAUL CAMPBELL, ET AL., Defendants | ) | |

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........ ii

FACTS ........ 1

LAW AND ANALYSIS ........ 4

A. Summary Judgment Standard ........ 4

B. Plaintiff failed to exhaust his administrative remedies prior to filing suit ........ 5

C. Neither Donna Norman nor Paul Cambell were deliberately indifferent to Plaintiff's medical needs ........ 9

D. Plaintiff does not have a claim for delayed medical care for his elbow ........ 10

E. Defendants are entitled to qualified immunity ........ 11

CONCLUSION ........ 12

CERTIFICATE OF SERVICE ........ 13

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| WALTER ALLEN DUBOSE,<br>Plaintiff, | ) | CIVIL ACTION NO. 3:24-cv-00120 |
| | ) | JUDGE DAVID C. JOSEPH |
| VERSUS | ) | |
| | ) | MAGISTRATE JUDGE MCCLUSKY |
| PAUL CAMPBELL, ET AL.,<br>Defendants | ) | |

## TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ........ 4, 5

*Bazan v. Hidalgo County*,
246 F.3d 481 (5th Cir. 2001) ........ 12

*Blank v. Bell*,
634 F.App'x 445 (5th Cir. 2016) ........ 11

*Booth v. Churner*,
532 U.S. 731, 121 S. Ct. 1819, 1825, 149 L.Ed.2d 958 (2001) ........ 8

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ........ 4, 5

*Club Retro, LLC v. Hilton*,
568 F.3d 181 (5th Cir. 2009) ........ 11

*Cousin v. Small*,
325 F.3d 627 (5th Cir. 2003) ........ 12

*Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*,
671 F.3d 512 (5th Cir. 2012) ........ 5

*Estelle v. Gamble*,
429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ........ 9

*Glenn v. City of Tyler*,
242 F.3d. 307 (5th Cir. 2001) ........ 12

*Gonzalez v. Seal*,
702 F.3d 785 (5th Cir. 2012) ........ 6

*Hafer v Melo*,
502 U.S. 21, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991) ........ 11

*Hamilton v. Segue Software, Inc.*,
232 F.3d 473 (5th Cir. 2000) ........ 5

*Hicks v. Lingle*,
370 Fed.App'x 497 (5th Cir. 2010) ........ 8

*Hudson v. McMillian*,
503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ........ 9

*Johnson v. Ford*,
261 Fed.App'x 752 (5th Cir. 2008) ........ 6

*Johnson v. Kukua*,
342 Fed.App'x 933 (5th Cir. 2009) ........ 6

*Little v. Liquid Air. Corp.*,
37 F.3d 1069 (5th Cir. 1994) ........ 5

*Malley v. Briggs*,
475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ........ 12

*Mendenhall v. Riser*,
213 F.3d 226 (5th Cir. 2000) ........ 12

*Mendoza v. Lynaugh*,
989 F.2d 191 (5th Cir. 1993) ........ 11

*Oliver v. Scott*,
276 F.3d 736 (5th Cir. 2002) ........ 11

*Pearson v. Callahan*,
555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d. 565 (2009) ........ 12

*Reeves v. Collins*,
27 F.3d 174 (5th Cir. 1994) ........ 9

*Simkins v. Bridges*,
350 Fed.App'x 952 (5th Cir. 2009) ........ 6

*Stahl v. Novartis Pharm. Corp.*,
283 F.3d 254 (5th Cir. 2002) ........ 5

*Thomas v. Fed. Bureau of Prisons*, Civil Action No. 05-1222, 2006 WL 3861962 (W.D.La. Dec. 13, 2006) ..... 6

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014) ..... 5

*Thompson v. Upshur County*, 245 F.3d 447 (5th Cir. 2001) ..... 12

*Wilson v. Epps*, 776 F.3d 296 (5th Cir. 2015) ..... 8

*Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) ..... 6

Statutes

42 U.S.C. § 1983 ..... *passim*

42 U.S.C. § 1997e ..... 5

Rules

FED. R. CIV. P. 56 ..... 4,5

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| WALTER ALLEN DUBOSE,<br>Plaintiff, | ) | CIVIL ACTION NO. 3:24-cv-00120 |
| | ) | JUDGE DAVID C. JOSEPH |
| VERSUS | ) | |
| | ) | MAGISTRATE JUDGE MCCLUSKY |
| PAUL CAMPBELL, ET AL.,<br>Defendants | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT,** through undersigned counsel, come Defendants, Warden Paul Cambell and Donna Norman, who file this memorandum in support of their accompanying motion for summary judgment.

## I. FACTS

From the outset, it must be stated that there is a valid reason to not put stock in Plaintiff's allegations. Plaintiff was deposed on October 16, 2024. During the deposition, and as a preliminarily matter, Plaintiff was instructed that he was expected to tell the truth during his deposition, and he was asked if there was any reason as to why he "would not be able to answer my questions truthfully today."[1] In response, Plaintiff stated:

> "Only in certain instant [sic.] that I think it's probably not—not—not helpful to—to my case, I mean. Yes. But that would be the only reason, now."[2]

That frank admission aside, Defendants will now consider the substance of Plaintiff's claims. This 42 U.S.C. § 1983 action concerns the following three issues: (1) whether Warden Paul Cambell and Nurse Donna Norman denied and/or delayed medical treatment for Plaintiff's

[1] See Exhibit A, Deposition Transcript of Walter Dubose, page 6, lines 3-6.
[2] *Id.*, page 6, lines 7-10.

allegedly detached focus lens; (2) whether Nurse Donna Norman ("Nurse Norman") would not allow Plaintiff to see a visiting doctor following an alleged elbow/arm injury on February 25, 2024; and (3) whether Nurse Norman denied Plaintiff surgery following a physician's alleged surgery recommendation on March 21, 2024.[3] Claims one and three overlap and, as such, they will be addressed together below.

At all pertinent times Plaintiff was a Louisiana Department of Corrections inmate incarcerated in OCC.[4] Given Plaintiff's status as a DOC inmate during his incarceration, the Louisiana Department of Public Safety and Corrections had to approve any surgeries to be performed on Plaintiff.[5] In order for the Louisiana Department of Public Safety and Corrections to approve a surgery for a DOC inmate—such as Plaintiff—they must be provided with medical records issued by a medical professional stating that a surgery is necessary.[6] These facts color the Plaintiff's allegations regarding his allegedly scheduled eye surgery.

Plaintiff alleges that he received a "focus lens" in one of his eyes in 2017, but it "came undone."[7] On July 27, 2023, Dr. Sharma evaluated Plaintiff at Ouachita Correctional Center ("OCC").[8] Plaintiff was subsequently seen by Dr. Chase Wilson ("Dr. Wilson") in the Ophthalmology Eye Clinic at Ochsner LSU on February 7, 2023.[9] Dr. Wilson noted that Plaintiff reported his vision had been out of focus since 2020 and that he was not in any pain.[10] An after visit summary was included in Plaintiff's Ochsner medical records, which state no orders were

[3] Until June 25, 2024, this action involved many different Defendants and many different claims, the latter of which this were determined by this Court to be "legally frivolous, for failure to state claims on which relief may be granted, and for seeking relief from Defendants immune from such relief." [R.Doc. 38, page 24].
[4] See Exhibit B, Declaration of Donna Norman, ¶ 3.
[5] *Id.*, ¶ 4.
[6] *Id.*, ¶ 5.
[7] R. Doc. 20, p. 1.
[8] R. Doc. 1, p. 5.
[9] See Exhibit B-1, Plaintiff's medical records relative to his February 7, 2023, visit with Dr. Chase.
[10] *Id.*, page 3.

placed, no medications were to be changed and, most importantly, Plaintiff "[had] no upcoming appointments scheduled."[11] The documents identified as Exhibit B-1 were the only records sent back to OCC with Plaintiff at the conclusion of his February 7, 2023 visit with Dr. Wilson.[12]

Although Plaintiff alleges Dr. Chase indicated Plaintiff would be seen by a Dr. Cavanaugh at "Shreveport Eye Clinic" within two (2) weeks,[13] there is absolutely nothing in the medical records Plaintiff returned with to indicate that is true.[14] Further, neither Nurse Donna Norman nor Warden Paul Cambell were ever contacted by any physician's office or medical office indicating Plaintiff was to be seen by Dr. Cavanaugh at any time.[15] Neither Donna Norman nor Paul Campbell deliberately delayed or denied Plaintiff medical treatment of any sort at any time including, but not limited to any surgery.[16]

Next, Plaintiff claims that on February 25, 2023, he injured his elbow in a physical altercation with another OCC inmate, such that he "surmised that his arm was fractured at the elbow."[17] Plaintiff alleges that on February 27, 2023, he saw Nurse Greer—who is not a defendant in this matter—and, on March 1, 2023, she told Plaintiff that *she* scheduled him to see a visiting doctor.[18] However, Plaintiff alleges that on two separate occasions he was rescheduled by some unidentified person to see the visiting doctor—not Donna Norman.[19] Plaintiff alleges that he suffered pain through 2023 and that his arm healed improperly, he cannot straighten it, and that it "gives out."[20]

---

[11] *Id.*, pages 1 and 5.
[12] See Exhibit B, Declaration of Donna Norman, ¶ 6.
[13] R. Docs. 20, p. 1; 26, p. 2.
[14] See Exhibit B-1, Plaintiff's medical records relative to his February 7, 2023 visit with Dr. Chase.
[15] See Exhibit B, Declaration of Donna Norman, ¶ 14 and Exhibit C, Declaration of Paul Campbell, ¶ 11.
[16] See Exhibit B, Declaration of Donna Norman, ¶ 11 and Exhibit C, Declaration of Paul Campbell, ¶ 12.
[17] See R. Doc. 33, p. 3.
[18] *Id.*
[19] *Id.*
[20] R. Docs. 33, p. 3 36, p. 3.

Presenting no evidence in support whatsoever, Plaintiff blames Nurse Norman for his condition, asserting that she was responsible for rescheduling Plaintiff's visits with the doctor. First and foremost, Nurse Norman did not reschedule either of Plaintiff's supposed visits, nor was it Donna Norman's responsibility to do so.[21] Secondly, and as more fully discussed below, Plaintiff failed to exhaust his administrative remedies regarding he alleged arm/elbow injury prior to filing suit in this matter.[22]

## II. LAW AND ANALYSIS

### A. <u>Summary Judgment standard.</u>

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*,

---

[21] See Exhibit B, Declaration of Donna Norman, ¶¶ 15 and 16.
[22] See Exhibit C, Declaration of Paul Campbell, ¶ 6.

283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. The court need consider only the cited materials. FED. R. CIV. P. 56(c)(3). Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

**B. Plaintiff failed to exhaust his administrative remedies prior to filing suit.**

Statutory and case law require prisoners to exhaust administrative remedies, regardless of the relief sought, before filing a § 1983 action in federal court. The relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), states the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or

> other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(Supp. 2000).

The Supreme Court has explained that prisoners must exhaust available administrative remedies, in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 2387, 165 L.Ed.2d 368 (2006); *see also Johnson v. Kukua*, 342 Fed.App'x 933, 934 (5th Cir. 2009) (holding "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all deadlines and procedural rules") (citing *Woodford*, 548 U.S. at 89-93). The Fifth Circuit has made clear that administrative remedies must be exhausted prior to filing a lawsuit rather than while a lawsuit is pending. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory"). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Johnson v. Ford*, 261 Fed.App'x 752, 755 (5th Cir. 2008) (citing *Woodford*, 126 S.Ct. at 2382).

The Fifth Circuit has consistently held that an inmate's ignorance of a prison's grievance system does not excuse his non-compliance and that no exceptions have been read into § 1997(e)(a). *Simkins v. Bridges*, 350 Fed.App'x 952, 953 (5th Cir. 2009) (citing *Thomas v. Fed. Bureau of Prisons*, Civil Action No. 05-1222, 2006 WL 3861962, at *2 (W.D.La. Dec. 13, 2006)). However, Plaintiff was very familiar with OCC's grievance procedure as shown through his testimony:

> Q: So, what—what I'm hearing is that you knew how to file a grievance.
> A: Right.
>
> Q: You may not have been happy with the procedure, but you were aware of how to file a grievance, correct?

A: Right.[23]

However, Plaintiff did not adhere to the ARP procedure of OCC insofar as Plaintiff failed to exhaust his administrative remedies relative to his OCC has a three step ARP policy in place and did so during Plaintiff's incarceration in OCC. The procedure is as follows:

**605.5 ARP- steps**

A. Step One
   1. The offender starts the procedure by filling out his grievance form. Here he tells what his complaint is and what he believes should be done. The original grievance form will become part of the procedure. The grievance form must be completed within 48 hrs. of incident (This requirement may be waived under certain circumstances, such as if the offender was ill and unable to write a grievance; for all such circumstances the Assistant Warden will use his best judgment).
   2. The form will be screened by the Assistant Warden or designee and, if accepted, be sent to the staff member who can best deal with the matter. This staff member will be known as the "Step One Respondent". For example, general security concerns will be forwarded to the Security Lieutenant, deputy complaints to the Shift Supervisor, food complaints will be forwarded to the kitchen supervisor, medical complaints to the medical director.
   3. The grievance may be referred to the employee named in the complaint. In such a case, Step One will be an information gathering step, not a decision making step. By giving the complaint directly to the employee named, information as to how or why a certain action was taken can be explained. If the offender has this information, he may better understand why events occurred as they did and the grievance may be resolved.
   4. The employee's response will be referred to his supervisor for review. If the supervisor believes that the response was inadequate or inappropriate for any reason, he will intervene.
   5. The Step One respondent will respond to the offender within 15 days from the date the completed grievance is received.

B. Step Two: Lieutenant/Designee Review
   1. An offender who is not satisfied with the response at Step One may reject the first step within 72 hrs of the offender's receipt of the Step one response.
   2. The Lieutenant or designee shall ensure that the offender receives his review decision in writing within five (5) days after the rejection was received from the offender for Step Two review.

C. Step Three: Warden / Designee Review
   1. An offender who is not satisfied with the results of the Step Two review may appeal to the Warden within 72 hrs of the date of the offender's receipt of step two responses.
   2. A decision will be made by the Warden/Designee. The offender will be notified in writing within thirty (30) days after the Warden/Designee received the appeal.
   3. The Ouachita Parish Sheriff's Office may claim an extension of up to 70 days to respond, if the normal time period for response is insufficient to make an appropriate decision. In such case, the Offender shall be notified in writing and provided with a date by which a decision will be made.

That same policy clearly states that a grievance will be rejected "if not on a standard form supplied by the Ouachita Correctional Center," does not contain the phrase "This is a grievance under the Administrative Remedy Procedure."[24] Warden Paul Campbell has reviewed Plaintiff's OCC inmate file, and it does not contain any grievances stating Donna Norman or any person

[23] See Exhibit A, Deposition Transcript of Walter Dubose, page 27, lines 4-9.
[24] See Exhibit C-1, Grievance Process [VI-B-002], page 237.

denied him medical care for his arm/elbow, either on an official ARP form or a non-standard form.[25]

Further, an inmate is required to exhaust all steps of a grievance process even if the prison fails to respond to his grievances at an earlier step in the process. *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015) (plaintiff failed to proceed through all three steps of the grievance process; instead, he completed only the first step, and then filed suit when his grievance was not responded to timely); *Hicks v. Lingle*, 370 Fed.App'x 497, 499 (5th Cir. 2010); *Ates v. St. Tammany Parish,* Civ. No. 13-5732, 2014 WL 1457777 (E.D.La. Apr. 15, 2014). Moreover, to the extent that language on the form or policy regarding subsequent step review is phrased in discretionary rather than mandatory terms, the prisoner still must exhaust all available steps. *Ates, supra.* (and cases cited therein); *see also Hicks*, *supra.* (inmate required to proceed beyond second step even though procedures said only that the inmate "may appeal" if dissatisfied with the first step response); *Wilson, supra.*, (subsequent steps of grievance process remained unexhausted even though phrased permissively as "may request," and "may appeal"). In short, the courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 1825, n.6, 149 L.Ed.2d 958 (2001).

Here, it is evident Plaintiff failed to exhaust his administrative remedies regarding a need for medical care relative to either of his arms or elbows. Summary judgment is appropriate as to Plaintiff's claims that Donna Norman "rescheduled his visits," would not allow Plaintiff to see a visiting doctor, and would not allow Plaintiff to undergo surgery on his arm/elbow. However, there is yet another reason to grant summary judgment here; namely, neither Donna Norman nor

[25] See Exhibit C, Declaration of Paul Campbell, ¶ 6.

Warden Campbell were deliberately indifferent to Plaintiff's medical needs relative to his impacted eye.

**C. Neither Donna Norman nor Paul Campbell were deliberately indifferent to Plaintiff's medical needs.**

Plaintiff was an incarcerated felon at all times during these proceedings.[26] As such, Plaintiff's claim for an alleged denial of medical care flows from the Eighth Amendment. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Id.* at 104, 97 S.Ct. 285 (citation omitted). Society does not expect that prisoners will have unqualified access to medical care and, as such, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Furthermore, a prison official is deliberately indifferent to a prisoner's serious medical needs only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (per curium).

However, neither Defendant was aware Plaintiff was allegedly scheduled for eye surgery in 2023. Plaintiff alleges that on February 7, 2023, Dr. Wilson examined him and scheduled him for "eye treatment" and surgery at Monroe-Ophthalmology Eye Clinic, which appears to be a part of the Ochsner LSU Health System.[27] While it is true Plaintiff was seen by Dr. Chase M. Wilson on February 7, 2023, Plaintiff omitted a critical fact; namely, Dr. Wilson is employed with Ochsner

---

[26] See R. Doc. 1, Plaintiff's Complaint, page 4, ¶ III (A), identifying Plaintiff's DOC number as 416005.

[2727] R. Doc. 1, page 5.

LSU Health System, and he is not a Ouachita Correctional Center doctor.[28] The medical records submitted by Defendants show that after being examined, Dr. Wilson: 1) placed no future orders; 2) no optical surgery consult was ordered; and 3) no optical surgery was scheduled.[29] In fact, Dr. Wilson apparently did not see a need to prescribe Plaintiff with any medication whatsoever.[30] Despite Plaintiff's representations to the contrary, the records generated by Dr. Wilson and/or Ochsner did not list a scheduling directive as to Plaintiff for "eye treatment," optical surgery, or any other form of treatment whatsoever. And, even if they had, this information was not made known to either Defendant.[31]

Plaintiff recognizes that his medical records do not identify a surgical date or date of future visit. Plaintiff explains this away by alleging, in the absence of any evidence whatsoever that his medical records were altered by: (1) his doctor and (2) his doctor's medical assistant at the behest of Nurse Norman (3) Warden Paul Campbell; and (4) undersigned counsel.[32] Warden Paul Cambell, Donna Norman, and undersigned counsel did not instruct any person to alter Plaintiff's medical records, nor are they aware of Plaintiff's medical records having been altered.[33] Considering neither Warden Paul Campbell nor Donna Norman had knowledge of any impending surgery, Plaintiff's claims against them must be dismissed.

**D. Plaintiff does not have a claim for delayed medical care for his elbow.**

Plaintiff alleges that he injured his arm/elbow on February 25, 2023. Although he was seen by a doctor on February 23, 2023, Plaintiff alleges that two subsequent visits were rescheduled,

---

[28] See Exhibit B-1, medical records of Plaintiff relative to his February 7, 2023 visit with Dr. Wilson.
[29] See Exhibit B-1.
[30] *Id.*, page 2.
[31] See Exhibits B and C, Declarations of Donna Norman and Paul Campbell, respectively.
[32] See Exhibit A, Deposition transcript of Walter Dubose, Page 37, lines 12-21; pages 83-84.
[33] See Exhibits B and C, Declarations of Donna Norman and Paul Campbell, respectively.

effectively resulting in a delay of medical treatment. Plaintiff faults Donna Norman for this delay. However, Donna Norman did not reschedule any appointment relative to Plaintiff's elbow.

A delay in medical treatment is not unconstitutional unless there has been deliberate indifferent that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference is an extremely high standard to meet. *Blank v. Bell*, 634 F.App'x 445, 448 (5th Cir. 2016). Here, it cannot be said Donna Norman was deliberately indifferent to Plaintiff's medical needs vis-à-vis his elbow because she was not involved in the alleged scheduling or rescheduling of Plaintiff's doctor's visits nor was she aware that surgery was allegedly recommended for Plaintiff's elbow.[34]

**E. Defendants are entitled to qualified immunity.**

It appears Warden Paul Campbell and Nurse Donna Norman have been sued in their individual capacities. A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show the official, acting under state law, caused the deprivation of a federal right. *Hafer v Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 361-62, 116 L.Ed.2d 301 (1991). Per the United States Fifth Circuit Court of Appeals, "This standard requires more than conclusional assertions. The Plaintiff must allege specific acts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 184 (5th Cir. 2009). The Supreme Court emphasized that qualified immunity functions as immunity from suit rather than a mere defense to

[34] See Exhibit B, Declaration of Donna Norman, ¶¶ 15, 16, and 19.

liability. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d. 565 (2009). At the summary judgment stage of a § 1983 action:

> "A defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it."

*Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003)(footnote omitted)(cleaned up).

"[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98, 89 L.Ed.2d 271 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d. 307 312 (5th Cir. 2001). The Fifth Circuit deems a defendant's actions objectively reasonable "unless *all* reasonable officers in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

Although Plaintiff has a clearly established right under the United States Constitution to medical care, he has not established either Warden Paul Campbell or Nurse Donna Norman violated that right by exhibiting a wanton disregard of Plaintiff's obvious medical needs. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Considering neither Defendant violated Plaintiff's Constitutionally protected rights, qualified immunity is appropriate here.

## III. CONCLUSION

Neither Donna Norman nor Paul Campbell were deliberately indifferent to Plaintiff's medical needs, and there is no evidence to support Plaintiff's contentions. Further, Plaintiff failed to exhaust his administrative remedies relative to his alleged arm/elbow injury. For these reasons, Defendant's submit summary judgment is appropriate in this matter.

Respectfully submitted,

FROSCH, RODRIGUE, ARCURI LLC

s/ *Jason P. Wixom*

BLAKE J. ARCURI (LSBN #32322)
LAURA C. RODRIGUE (LSBN #30428)
JASON P. WIXOM (LSBN #32273)
1615 Poydras Street, Suite 1250
New Orleans, Louisiana 70112
Tel: (504) 592-4600 Fax: (504) 592-4641
COUNSEL FOR DEFENDANTS
Email: barcuri@fralawfirm.com
lrodrigue@fralawfirm.com
jwixom@fralawfirm.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of June, 2025, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participant(s) by United States Mail, properly addressed and postage pre-paid.

s/ *Jason P. Wixom*